# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA URBANSKI and STEVEN URBANSKI, h/w individually and as parents of J. U., a minor,<br><br>   Plaintiffs,<br><br>   v.<br><br>BAYADA HOME HEALTH CARE,<br><br>   Defendant. | CIVIL ACTION NO. 14-CV-1508<br>(JUDGE CAPUTO) |

## MEMORANDUM

Presently before the Court is Defendant Bayada Home Health Care's ("Bayada") Motion to Dismiss (Doc. 8) the Complaint (Doc. 3) of Plaintiffs Lisa and Steven Urbanski, brought on behalf of their son, J. U., a minor.  Plaintiffs assert five (5) counts: Negligence (Count I), Negligent Hiring (Count II), Negligent Infliction of Emotional Distress (Count III), Intentional Infliction of Emotional Distress (Count IV) and Consumer Fraud (Count V).

Defendant asserts that the Complaint should be dismissed for lack of subject matter jurisdiction for failure to establish standing pursuant to Federal Rule of Civil Procedure 12(b)(1).  Defendant also moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiffs' negligence-based claims for failure to state a claim upon which relief can be granted.  Because Plaintiffs do not allege any actual harm caused by Bayada's employee Ms. Nieves in the course of her employment or at the place of her employment, Defendant's Motion to Dismiss Plaintiffs' claim for negligent hiring pursuant to Rule 12(b)(1) will be *granted* .  With respect to Plaintiffs' other four (4) claims (negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and consumer fraud), they do assert actual injury in their complaint (Doc. 3), and so Defendant's Motion to Dismiss those claims for lack of subject matter jurisdiction will be *denied*. Because Plaintiffs do state a claim for negligent infliction of emotional distress, based on the emotional distress that they personally experienced as a result of Bayada's actions, Defendant's Motion to Dismiss this count for failure to state a claim will be *denied.*

# I. Background

**A. Factual Background**

The facts, as alleged in the amended complaint (Doc. 3) are as follows: Plaintiffs Lisa and Steven Urbanski ("The Urbanskis") are a married couple who reside in Wapwallopen, Pennsylvania. (Doc. 3, ¶ 1.) They are the parents and guardians of their minor son, J. U., born in March 2005. (*Id.,* ¶¶ 2, 6.)

Defendant Bayada Home Health Care ("Bayada") is a national health services corporation that provides nurses and other services to clients. (*Id.*, ¶ 3.) It is based in New Jersey. (*Id.*)

The Urbanski's son, J. U., was diagnosed with a rare genetic disorder, Partial Trisomy 16, soon after he was born. (*Id.*, ¶ 6.) According to the Complaint, children born with this disorder rarely survive past the first days of life. (*Id.,* ¶ 7.) However, J. U. has lived well past this life expectancy, and is medically stable and in good physical health. (*Id.,* ¶ 9.) He had numerous surgeries as a young child, but has made constant medical progress. (*Id.,* ¶ 7.) J. U. walks, runs, and plays, uses an iPad, watches movies, and shows affection to others. (*Id.*, ¶ 9.) Plaintiffs believe that J. U. is the longest-surviving child with Partial Trisomy 16. (*Id.*) J. U. is significantly impaired cognitively and is largely non-verbal. (*Id.,* ¶ 10.) In the last year, he has begun to vocalize a few words, and can use sign language to express around twenty (20) words. (*Id.*) J. U. attends Good Shepherd Academy, a private Catholic school in Kingston, Pennsylvania, where he receives one-on-one instruction and physical, occupational, and speech therapy. (*Id.*, ¶ 11.)

This action arises out of events that occurred when Plaintiffs contracted with Defendant beginning in 2008 to provide a nurse or aide to accompany J. U. while he was at school, including providing him with assistance in the restroom. (*Id.*, ¶ 12.)

Plaintiffs assert that Defendant Bayada holds itself out as a company that provides qualified and trained health care professionals. (*Id.*, ¶ 13.) Specifically, Bayada promotes its pediatric services by stating on its website: "Our compassionate, carefully screened, and experienced BAYADA Pediatric Nurses manage diverse diagnoses and high-tech equipment,

while our highly trained and caring BAYADA Pediatric Home Health Aides provide assistive personal care and support services." (*Id.*) Bayada also includes "A Message from Mark Baiada," its president and owner, in its Admission Booklet, which states:

> Our mission is to help your child have a safe home life with comfort, independence and dignity. We call our employees *Heroes on the Home Front* because they deliver home care with compassion, excellence, and reliability; our Bayada Nurses' core values. Not everyone can be a Bayada Nurse, but those selected are a special group who symbolize quality. Our heroes will do everything in their power to ensure that your home care experience is as pleasant as possible.

(*Id.*, ¶ 14.) Plaintiffs contend that Bayada falsely represents that it hires only qualified and competent staff, and that Plaintiffs justifiably relied on Bayada's false representations when they chose Bayada to provide services to their minor child. (*Id.*, ¶¶ 65-66.)

In September 2012, Bayada provided a second aide, Kyoni Nieves, to work with J. U. on Fridays and when his regular aide was not available. (*Id.*, ¶ 15.) Plaintiffs assert that at all relevant times, Ms. Nieves was an employee, agent, or ostensible agent of Bayada. (*Id.*, ¶ 32.) In June 2013, J. U.'s regular aide announced he was leaving Bayada, and Ms. Nieves requested that she be considered for the position of J. U.'s full-time aide. (*Id.*, ¶ 16.) Plaintiff Lisa Urbanski discussed this with J. U.'s teacher at Good Shepherd Academy, who advised that the Urbanskis not select Ms. Nieves for the position. (*Id.*, ¶ 17.)

On February 11, 2014, Plaintiff Lisa Urbanski received a phone call from Bayada's Director of Pediatrics, Carolyn Kozerski. (*Id.*, ¶ 18.) Ms. Kozerski said that while she did not feel it was necessary, "out of the goodness of our hearts" Bayada wanted to inform Plaintiffs that there was an article in the newspaper that one of the nurses who had worked with J. U., Kyoni Nieves, had been arrested. (*Id.*, ¶ 19.)

According to Plaintiffs' Complaint, Ms. Nieves was indicted on January 21, 2014, for:

> Conspiracy to Commit Sex Trafficking of Children by Force and Coercion; Conspiracy to Transport a Minor in Interstate Commerce with Intent in Engage in Criminal Sexual Activity; Persuading, Enticing, Coercing an Individual to Travel in Interstate Commerce to Engage in Prostitution; Carrying and Possessing a Firearm During and in Relation to and in Furtherance of a Crime of Violence; and related charges.

3

(*Id.*, ¶ 20.) According to the indictment, Ms. Nieves had posted explicit cell phone photos of a minor to a website in order to solicit customers for child prostitution. (*Id.*, ¶ 21.) Ms. Nieves' husband was indicted on the same charges. (*Id.*)

When Bayada's Director of Pediatrics informed Ms. Urbanski about Ms. Nieves' arrest, she claimed that Bayada had checked Ms. Nieves' credentials and determined that she was well-qualified and had a "golden" record. (*Id.,* ¶ 22.) Ms. Urbanski demanded to see all records Bayada had that related to background checks of Ms. Nieves. (*Id.*, ¶ 23.)

On February 12, 2014, Bayada provided Ms. Urbanski with copies of documents relating to Ms. Nieves' background check. (*Id.*, ¶ 24.) A document from the Childline and Abuse Registry of the Pennsylvania Department of Public Welfare indicated that a criminal background check showed that a criminal record existed for Ms. Nieves as of September 4, 2012. (*Id.*) However, Bayada did not further investigate this record. (*Id.*, ¶ 25.)

After speaking to Bayada, Ms. Urbanski performed a Google search of Ms. Nieves' name, which turned up several documents indicating that Ms. Nieves had engaged in criminal activity. (*Id.*, ¶ 26.) After this, Plaintiffs had J. U. evaluated by his pediatrician, a developmental pediatrician at Children's Hospital of Philadelphia, and the medical director of the Scranton Children's Advocacy Center, and neither "have been able to rule out" that J. U. was abused while under Kyoni Nieves' care. (*Id.*, ¶ 27.)

Plaintiffs have experienced significant stress, anxiety, and emotional anguish as parents, which they claim is the result of the negligent and reckless conduct of Defendant. (*Id.*, ¶ 28.) They assert that J. U. suffered "as-yet-undetermined physical and/or emotional injuries." (*Id.*, ¶ 38.) Plaintiffs claim that because of J. U.'s limited communication skills, they "cannot exclude the likelihood" that Ms. Nieves "physically mistreated" J. U. (*Id., ¶* 57.)

Plaintiffs allege that Defendant Bayada had a duty to hire and retain competent and qualified nurses and health aides, and to perform proper background checks on all personnel assigned to work with children. (*Id.*, ¶¶ 30-31.) Plaintiffs assert that Bayada was responsible for the conduct of Kyoni Nieves. (*Id.,* ¶ 33.) Plaintiffs further assert that Bayada failed to perform adequate background checks on Ms. Nieves, failed to investigate Ms. Nieves'

criminal background, carelessly disregarded documentation that Ms. Nieves had a criminal record, failed to ensure that Ms. Nieves had appropriate and adequate qualifications to work with J. U., failed to have appropriate policies for hiring aides who worked with children, and failed to take reasonable steps to protect J. U. from danger. (*Id.,* ¶ 34.) Plaintiffs allege that as a result of Bayada's failures, J. U. was in the care of an unqualified and inexperienced health aid who had been involved in criminal activity prior to her hiring, and was indicted for sex-related crimes against children at the same time she was caring for J. U. (*Id.,* ¶¶ 36-37.)

**B. Procedural Background**

Based on the foregoing, on April 16, 2014, plaintiffs filed a Complaint in United States District Court for the Eastern District of Pennsylvania (Doc. 1), which they amended shortly after (Doc. 3).  In their Complaint, Plaintiffs assert five (5) counts: Negligence (Count I), Negligent Hiring (Count II), Negligent Infliction of Emotional Distress (Count III), Intentional Infliction of Emotional Distress (Count IV) and Consumer Fraud (Count V). (*Id.*)

On June 14, 2014, Defendant Bayada filed a Motion to Dismiss (Doc. 8).  Bayada asserted three grounds for dismissal: first, lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("F.R.C.P.")12(b)(1), for failure to assert standing and ripeness.  Second, improper venue pursuant to F.R.C.P. 12(b)(3), or in the alternative, transfer of venue pursuant to 28 U.S.C. § 1404.  Third, failure to state a claim pursuant to F.R.C.P. 12(b)(6).

On June 30, 2014, the presiding judge in the Eastern District of Pennsylvania issued a Memorandum and Order transferring this case to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404 (Docs. 11, 12.) In August 2014, the case was transferred to the Middle District of Pennsylvania and assigned to me.  Two of the three grounds for dismissal asserted by Bayada in their Motion to Dismiss remain: lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## II. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

**A. Legal Standard**

A motion to dismiss brought pursuant to F.R.C.P. 12(b)(1) asserts that there is a lack of subject matter jurisdiction over the complaint in the absence of standing. Standing is a jurisdictional matter. *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000), *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970)). Thus, I must address Defendant's motion brought under F.R.C.P. 12(b)(1) first.

A motion asserting lack of standing can be brought as challenge to standing in fact, or as a facial challenge specific to the allegations contained in the Complaint. *New Life Homecare, Inc. v. Blue Cross of Ne. Pa.*, No. CIV.A. 3:06-CV-2485, 2008 WL 423837, at *3 (M.D. Pa. Feb. 14, 2008) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Defendant in this case makes clear that it brings this challenges as a facial attack. (Doc. 8-1, 6.)

Where a defendant challenges a complaint as deficient on its face in this context, the Court must assume that "the allegations contained in the complaint are true." *Id.* In deciding a F.R.C.P. 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and "undisputably authentic" documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss. *Hunter v. United States*, 2000 U.S. Dist. LEXIS 20206, at *7 (M.D. Pa. Dec. 15, 2000). *See generally Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993). At the pleading stage, "'general factual allegations of injury resulting from the defendant's conduct may suffice'" to confer standing. *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Article III of the Constitution "limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies.'" *Hein v. Freedom from Religion Found., Inc.,* 551

U.S. 587, 597–98 (2007) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). "'[O]ne of the controlling elements in the definition of a case or controversy under Article III' is standing." *Id.* at 598 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605 (1989)). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000) (citing *Lujan*, 504 U.S. at 560–561).

To satisfy the injury in fact requirement of Article III standing, a plaintiff's injury "must be concrete in both a qualitative and temporal sense." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Thus, "the complaint must allege an injury . . . that is 'distinct and palpable,' as distinguished from merely 'abstract' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Id*.

**B. Analysis**

In its Brief in Support of its Motion to Dismiss (Doc. 8-1), Defendant asserts that Plaintiffs have not properly alleged standing because they did not allege that Ms. Nieves actually committed a negligent act. Furthermore, Defendant argues that Plaintiffs did not allege that their son suffered any actual injury, and instead only claim possible, potential, or future injuries. Thus, Defendant argues that Plaintiffs failed to properly allege standing and so do not have subject matter jurisdiction pursuant to F.R.C.P. 12(b)(1).

One of Plaintiffs' claims in their complaint is predicated on negligence on the part of Ms. Nieves, and harm to the plaintiffs' son, J. U.: negligent hiring.

With respect to negligent hiring, under Pennsylvania law, an employer is subject to liability for harm resulting from his an employee's conduct if the employer is:

7

>negligent or reckless "in the employment of improper persons or instrumentalities in work involving risk of harm to others; . . . in the supervision of the activity; or . . . in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control." *R.A. ex rel. N.A. v. First Church of Christ,* 748 A.2d 692, 697 (Pa. Super. Ct. 2000), (citing *Restatement (Second) of Agency* § 213(b), (d) (1958)). Accordingly, an employer owes a duty "to exercise reasonable care in selecting, supervising and controlling employees." *Id.*

*Doe v. Liberatore*, 478 F. Supp. 2d 742, 760 (M.D. Pa. 2007).

In this action, taking the facts in a light most favorable to Plaintiffs, Plaintiffs have not plead that Ms. Nieves committed a negligent act in the course of her employment, nor upon the premises of her employment or with instrumentalities under the control of her employer, Defendant Bayada. Plaintiffs do not assert that Ms. Nieves acted negligently in this context, only that they cannot rule out that she did. (Doc. 3, ¶ 57.) Even after the examination of multiple doctors, Plaintiffs do not allege that there is any concrete indication that Ms. Nieves harmed J. U. or that he was injured. (*Id.,* ¶ 27.) The harm that Plaintiffs allege, on the part of Ms. Nieves, is abstract and speculative, and thus does not confer standing on the plaintiffs. Without an underlying negligent act on the part of Ms. Nieves that caused harm to the plaintiffs or their minor son, Defendant Bayada can not be held liable under a theory of negligent hiring. Based on the foregoing, Defendant's motion to dismiss Plaintiff's claim for negligent hiring will be *granted* and the claim will be dismissed.

Viewing the facts alleged in the complaint as true, Plaintiffs do have standing to assert their other four (4) counts: Negligence (Count I), Negligent Infliction of Emotional Distress (Count III), Intentional Infliction of Emotional Distress (Count IV) and Consumer Fraud (Count V). Plaintiffs meet the requirements for standing set out in *Lujan*, 504 U.S. at 560-561, and interpreted in *Friends of the Earth, Inc.,* 528 U.S. at 181: they allege that they have suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Whether or not their son, J. U., was actually physically

8

abused by Ms. Nieves, the plaintiffs have properly alleged that they experienced emotional distress because of Defendant's negligent actions–which is sufficient for the purposes of standing for these four claims.  Furthermore, Plaintiffs have sufficiently alleged that they suffered consumer fraud at the hands of Bayada: Bayada made a series of allegedly false claims in its advertising that they relied on, resulting in their son being in the care of untrained and potentially unsafe aides, when they believed they were paying Bayada to provide a trained and properly vetted aide.

Theses four claims are not predicated on whether Ms. Nieves committed a negligent act against their son; instead, they are predicated on Bayada's failure to hire properly trained and audited aides, and on the emotional distress that the plaintiffs have suffered as a result of the discovery that their son was not being cared by properly trained and thoroughly vetted aides.  Bayada allegedly misrepresented itself and failed to perform even the most basic background check of its employees–and failed to conduct any further research when an employee's record indicated that she had a criminal history.  Based on the foregoing, Plaintiffs have properly asserted that they have standing to assert four of five counts contained in their complaint: negligence, negligent infliction fo emotional distress, intentional infliction of emotional distress, and consumer fraud.

### III. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)
### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  When considering such a motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims.  *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by F.R.C.P. 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower*

*Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

In deciding a motion to dismiss, the Court considers the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196.

**B. Analysis**

Defendant asserts that Plaintiffs failed to state a claim upon which relief can be granted pursuant to F.R.C.P. 12(b)(6) for Negligent Hiring (Count II) and Negligent Infliction of Emotional Distress (Count III). As I found in section (II) above that Plaintiffs have not asserted standing to state a claim for negligent hiring, negligent infliction of emotional distress is the only count that remains to be analyzed.

Under Pennsylvania law, a cause of action for negligent infliction of emotional distress "absent physical impact or injury" can only stand in limited circumstances. *Toney v. Chester Cnty. Hosp.*, 614 Pa. 98, 100 (2011). Plaintiffs Lisa and Steven Urbanski assert in their Brief in Response to Defendant's Motion to Dismiss (Doc. 9-1) that their emotional distress included physical manifestations. However, in reading the complaint, the Urbanskis do not assert any form of physical manifestation of their emotional distress. Furthermore, they do not allege that their son, J. U., definitively suffered any physical mistreatment at the hands of Ms. Nieves, rather, they assert that she may have physically assaulted him and that medical examinations "could not exclude" this possibility.

The Pennsylvania Supreme Court has held that recovery for negligent infliction of emotional distress does not require a physical impact, and can stand where "there exists a special relationship where it is foreseeable that a breach of the relevant duty would result in emotional harm so extreme that a reasonable person should not be expected to endure the

resulting distress." *Toney*, 614 Pa. at 100.  Taking all facts in the Complaint as true and resolving all inferences in favor of Plaintiffs, the Urbanskis have met this standard.  Plaintiffs and Defendant were in a relationship in which Plaintiffs contracted with Defendant to provide care for their severely disabled son.  Defendant held itself out as providing extremely high-level care, with highly trained, highly screened aides.  Instead, Bayada appears to not have taken even a minimum of care when selecting aides–for example, Ms. Nieves' background check revealed a criminal history, and yet Bayada did not explore this further.  Plaintiffs appear to have relied upon Defendant's promises that they provided extensively checked and properly trained aides.  It is a foreseeable that a breach of this duty to providehigh-level care for their very disabled son would result in extreme emotional harm, such that a reasonable person should not be expected to endure the resulting distress.  Therefore, Defendant's motion to dismiss Plaintiffs' claim for negligent infliction of emotional distress will be *denied.*

## IV. Conclusion

For the above reasons, Defendant's Motion to Dismiss (Doc. 8) Plaintiff's claim of negligent hiring will be *granted.*  In all other respects it will be *denied.*

An appropriate order follows.

April 22, 2015  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge